IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT D. SANDOVAL,

    Plaintiff,

vs.                                            Civ. No. 97-723 BB\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

Proposed Findings

1. This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand, filed May 15, 1998. The Commissioner denied Plaintiff's request for both disability insurance and supplemental security income benefits. Plaintiff alleges a disability due to a back injury. He also claims to suffer from diabetes mellitus, hepatitis C, and a mental impairment.

2. The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's administrative law judge (ALJ) likewise denied the applications. The Appeals Council did not review the ALJ's decision, thus the final decision of the Commissioner is the ALJ's decision. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the

1

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  **Id**. (citation omitted).

      4.  Plaintiff raises the following allegations of error with respect to the ALJ's decision:  1) the ALJ did not support with substantial evidence his determination that the Plaintiff's mental impairment is not severe; 2) the ALJ did not support with substantial evidence his decision that Plaintiff's allegation of disabling pain is not credible; and 3) the ALJ erred by conclusively applying the Medical-Vocational Guidelines (grids) despite the Plaintiff's nonexertional impairments due to pain and a mental impairment.[1]

      5.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  **Id**. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  To determine disability, the Commissioner has established a five step sequential evaluation process.  **Id**.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  **Id**. (citations omitted).

      6.  Steps two and five of the sequential evaluation process are at issue in this case.  At step two, the claimant must show that he has an impairment or combination of impairments which are severe enough to limit his ability to do basic work activities.  20 C.F.R.§§404.1520(c); 416.920(c).  Basic work activities include, for example, physical functioning; ability to hear, see, and speak; ability to follow simple instructions; use of judgment; appropriate responses to fellow

---

[1] The Plaintiff also asserts for the first time in his reply brief that the ALJ erred in finding that the Plaintiff's spinal disorder did not meet a listing at step three of the sequential evaluation process.  This assertion is untimely and deemed waived.  **See, e.g., United Airlines, Inc. v. CEI Industries, Inc.**, 664 F.Supp. 1216, 1217 (N.D. Ill. 1987).

workers, supervisor, and usual work situations; and the ability to deal with changes in routine work.  **Id**. at §§404.1521(b); 416.921(b).  If the evidence is unclear as to whether the impairment is severe or not, the sequential evaluation process is continued.  Soc. Sec. Ruling 85-28.

      7.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity (RFC) to do work in the national economy other than past relevant work. 20 C.F.R.§§404.1520(f); 416.920(f).  The grids are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various RFC levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

      8.  The Plaintiff's first argument is that the ALJ did not support with substantial evidence his finding at step two that the Plaintiff's mental impairment is not severe.  The ALJ found that the Plaintiff was diagnosed as having an adjustment disorder with depressed and anxious mood.  Tr. 31.  The ALJ further found that the Plaintiff has "anhedonia, decreased energy, feelings of guilt or worthlessness and psychomotor retardation."  Tr. 32.  He also found that the Plaintiff has "a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation."  Tr. 33.  The ALJ, however, found that the Plaintiff's mental impairment did not impact the Plaintiff's daily activities or social functioning.  Tr. 35-36.  In addition, the ALJ determined that the Plaintiff does not have any deficiencies in his ability to concentrate, persist, or keep pace; has never decompensated in a work like setting; and

is able to function independently outside his home. Tr. 37-38.

9. The administrative record indicates that the Plaintiff saw psychologist Dr. Naimark on four occasions between March 17, 1994 and May 16, 1994. Tr. 217-27. Dr. Naimark's initial examination revealed that the Plaintiff has a chronic pain syndrome with "multiple physical complaints, some of which suggest the presence of an affective component." Tr. 224. Dr. Naimark also noted that the Plaintiff has "significant hypochondriacal and hysterical features" and described the Plaintiff as a "pain-focused individual" whose "pain-focusing behaviors are quite severe." **Id**.; Tr. 227. Testing showed that the Plaintiff "is probably experiencing a fairly high level of stress. Level of energy is on the low side of normal limits." Tr. 223. Because the Plaintiff was working two jobs at the time of his back injury, Dr. Naimark opined that "there is a possibility that [Plaintiff] will be able to develop the motivation necessary to deal more effectively with the residual physical difficulties." Tr. 224.

10. The Plaintiff also saw Dr. Hochman, a psychiatrist, on July 26, 1994. Dr. Hochman disagreed with Dr. Naimark's finding of hypochondriasis and instead diagnosed the Plaintiff as having an adjustment reaction with mixed emotional features. Tr. 231-33.[2] A couple of days later, Dr. Hillman, another psychiatrist, examined the Plaintiff. Tr. 235-37. Dr. Hillman found that the Plaintiff has an adjustment disorder with mixed features and chronic pain syndrome, severe psychosocial stressors, and a global assessment of functioning (GAF) which demonstrated "significant social and occupational impairment." Tr. 236-37.

---

[2]Dr. Hochman apparently believed that the Plaintiff was disabled due to his back injury but not necessarily from the mental impairment. **See** Tr. 232, 234, 246.

11. On December 5, 1994, the Plaintiff saw yet another psychiatrist, Dr. Johnson. Dr. Johnson diagnosed the Plaintiff as having "a chronic pain condition with a reactive depression and reactive anxiety as a result. The depression does not appear to be adequately treated at this time as his symptoms are persistent." Tr. 240. Dr. Johnson noted that the Plaintiff "is motivated to return to health rather than motivated to continue to appear ill." **Id**. Dr. Johnson concluded that the Plaintiff has a GAF score of approximately 48. Tr. 241. Such a score indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32 (4th ed. 1994).

12. I find that the above psychological and psychiatric evidence constitutes substantial evidence that the Plaintiff's mental impairment limits his ability to do basic work activities. Consequently, I conclude that the ALJ did not support with substantial evidence his finding that the Plaintiff's mental impairment is not severe. Even if one considers the above evidence to be unclear with respect to the Plaintiff's ability to do basic work activities, the ALJ should have proceeded with the sequential evaluation process. A remand is, therefore, appropriate so that the Commissioner can consider the Plaintiff's mental impairment as a severe one.

13. The Plaintiff argues next that the ALJ did not support with substantial evidence his decision that Plaintiff's allegation of disabling pain is not credible. Specifically, the Plaintiff asserts that the ALJ erred by giving too much weight to the opinions and reports by Dr. Jones, Plaintiff's treating physician from January 26, 1994 to April 6, 1994. Tr. 197-203. A treating physician's opinion about the nature and severity of a claimant's impairments will be given controlling weight under certain circumstances. **See Reid v. Chater**, 71 F.3d 372, 374 (10th

5

Cir. 1995) (citation omitted).  However, "[t]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the fact-finder, including opinions of other physicians." **Id**. (citation omitted).  For example, it is clearly within the ALJ's authority to reject physicians' opinions which are unsupported by the objective evidence of record.  **See Castellano v. Sec. of Health & Hum. Serv.**, 26 F.3d 1027, 1029 (10th Cir. 1994).  Additionally, the opinion of a treating physician will be accorded little weight when it is internally inconsistent.  **Goatcher v. Dep't of Health & Hum. Serv.**, 52 F.3d 288, 290 (10th Cir. 1995).

     14.  At the time the Plaintiff first saw Dr. Jones on January 26, 1994, Dr. Jones ordered that x-rays of Plaintiff's lumbar spine be taken.  Tr. 200, 203.  Those x-rays showed that "no significant pathology [was] identified."  Tr. 203.  Dr. Jones' physical exam of the Plaintiff was also normal.  Tr. 200-201.  Dr. Jones concluded that the Plaintiff has "a tendency for pain focusing and symptom magnification, at this point."  Tr. 201.  Nonetheless, Dr. Jones recommended physical therapy for two weeks and noted that "because of his subjective complaints he should be not [sic] be considered as capable of performing his job for approximately 2 weeks."  **Id**.

     15.  When the Plaintiff saw Dr. Jones on February 9, 1994, Dr. Jones observed that there were no "neurological findings."  Tr. 199.  Dr. Jones again noted that the Plaintiff "seems to be very strongly pain-focused and symptom magnifying.  His subjective complaints seem greatly out of proportion to the paucity of objective findings."  **Id**.  Dr. Jones recommended use of over the counter medication, low back support, and physical therapy.  **Id**.  Dr. Jones also stated that "because of his disabling subjective complaints, I do not think he is capable of returning to gainful

employment for a few more weeks." **Id**.

16. Dr. Jones saw the Plaintiff next on February 23, 1994. Tr. 198. Dr. Jones recommended that the Plaintiff not see Dr. Novosad who prescribed Percocet and calcium pills. **Id**. Dr. Jones then stated that "orthopedically, in my opinion, [Plaintiff] is sound, and his primarily [sic] problem is that of pain management. I am not placing any restrictions on his activities." **Id**. Dr. Jones made an appointment for Plaintiff to see Dr. Naimark for pain management. **Id**.

17. The Plaintiff saw Dr. Jones one last time on April 6, 1994. Dr. Jones observed that the Plaintiff's "gait seems to improve as he is walking back to his car." Tr. 197. Dr. Jones indicated that he reviewed the magnetic resonance image (MRI) taken February 15, 1994 as well as the addendum to the MRI interpretation by Dr. Hurwitz. **Id**. Dr. Hurwitz stated that "the impinging of this nerve can be compatible with the clinical syndrome of low back pain and left leg pain." **Id**.; Tr. 202. Dr. Jones than stated that in his "opinion, in view of Mr. Sandoval's absence of clinical findings, I do not think the MRI can be considered as an explanation of his subjective complaints. In addition, I do think the MRI in any way gives cause for treatment of Mr. Sandoval's symptoms other than by conservative means, including pain management." Tr. 197. A second MRI taken in June 1995 was found to be an "essentially normal MRI of L-spine and unchanged. The lateral disc bulge seen on the previous study is of doubtful clinical relevance and most likely due to an artifact but in any event is unchanged." Tr. 250.

18. Having reviewed Dr. Jones's records, I find that they are supported by the objective evidence and are not internally inconsistent. The objective medical evidence simply does not indicate that the Plaintiff has an exertional impairment. Consequently, Dr. Jones could find that

the Plaintiff is not physically limited.  However, Dr. Jones recognized that the Plaintiff's pain may well have a psychological component by having the Plaintiff see Dr. Naimark for pain management. I conclude based on the above that the ALJ did not err by placing great weight on Dr. Jones' opinions in finding that there was not an exertional impairment responsible for causing the alleged disabling pain.[3]

19.  The Plaintiff lastly asserts that the ALJ erred by conclusively applying the grids despite the Plaintiff's nonexertional impairments of a mental impairment and pain.  The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant.  **Gossett v. Bowen**, 862 F.2d 802, 807 (10th Cir. 1988); **see also Eggleston v. Bowen,** 851 F.2d 1244, 1247 (10th Cir. 1988) (presence of nonexertional impairment does not preclude use of grids if nonexertional impairment does not further limit claimant's ability to perform work).  **See also Ray v. Bowen**, 865 F.2d 222, 225 (10th Cir. 1989) (mere presence of nonexertional impairments do not automatically preclude reliance on the grids; it must interfere with the ability to work), **cited in Thompson v. Sullivan**, 987 F.2d 1482, 1488 (10th Cir. 1993). Since there is substantial evidence to indicate that the Plaintiff's mental impairment and associated manifestation of magnified symptoms limit basic work activities, **see supra**, I find that the ALJ erred by conclusively applying the grids to this case.

---

[3]The Plaintiff attempts to argue that Dr. Jones is biased against injured workers because of his work for Worker's Compensation.  The Plaintiff admits, however, that there is nothing in the record to indicate that Dr. Jones is known to have a pro-employer bias.  Plaintiff's Motion to Reverse or Remand at 9, filed May 15, 1998.

Recommended Disposition

I recommend granting in part the Plaintiff's Motion to Reverse or Remand.  Specifically, I recommend remanding this matter to the Commissioner so that he can consider the Plaintiff's mental impairment beyond step three of the sequential evaluation process; and should the Commissioner reach step five, the grids will not be applied in a conclusive manner.[4]  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE

---

[4] Although the ALJ did not find that the mental impairment was severe under step two of the sequential evaluation process, he nevertheless did a step three listings analysis.  The Plaintiff does not contest the step three analysis of his mental impairment.